IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| RYAN W ROBERTS, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:20-00076-CV-RK |
| | ) |
| THE DEPARTMENT OF VETERANS AFFAIRS, VETERANS HEALTH ADMINISTRATION; DR. RICHARD STONE, EXECUTIVE IN CHARGE VHA; DR WILLIAM PATTERSON, VISN 15 DIRECTOR; RICKY AMENT, ROBERT J DOLE VAMC FACILITY DIRECTOR; VALERIE MCCLARAN, PSB CHAIRPERSON, CRNA; CHRISTINA DEAN, EMPLOYEE RELATIONS/LABOR RELATIONS; AND SANDRA MILLER, EMPLOYEE RELATIONS/LABOR RELATIONS; | ) |
|     Defendants. | ) |

**Petition for Default Judgement**

Facts:

- The defendants in the case Roberts v. The Department of Veterans Affairs have been served and have failed to respond within 21 days. Fed. R. Civ. P. 12(a)(1)(A).

- The defendants in the case Roberts v. The Department of Veterans Affairs have not filed or rebutted any of the accusations that Mr. Roberts has made against The Department of Veterans Affairs.

- Mr. Roberts has shown clear and concise evidence that The Department of Veterans Affairs and their actors (Dr. Richard Stone, Dr. William Patterson, Mr. Ricky Ament, Ms. Valerie McClaran, Ms. Christina Dean, and Ms. Sandra Miller) are directly related to the actions of the Veterans Health Administration of The Department of Veterans Affairs

decision and action to intentionally and consciously violate Federal Statutes in the action of Whistleblower Retaliation by terminating Mr. Ryan Roberts for notifying leadership of patient safety and employee safety issues within the Surgery Department at the Robert J Dole VAMC.

- Secretary of the VA Robert Wilkie signed the Union Master Agreement, specifically Title 38 Decision Paper on October 25th 2019. The defendants in the case cited the Union Master Agreement as a reference that supported the decision to violate the Federal Statutes listed. Title 38 clearly does not state, nor give authority to violate Federal Statutes, rather Title 38 clarifies that the actions conducted by the members of the Veterans Health Administration were done so in reckless disregard to violate not only the Federal Statutes but VA Policies and Procedures, as well as the Union Master Agreement. These actions show that the defendants were aware of their actions and consciously decided to violate the Federal Statutes to terminate Mr. Ryan Roberts.
    - The Veterans Health Administration intentionally violated Title 38 of the Union Master Agreement and 38 USC §7422 by conducting a Professional Standards Board (PSB) that had a scope that was directly outside of "Direct Patient Care" and "Clinical Competency". As such, the Veterans Health Administration, and its actors, knowingly and intentionally violated Federal Statutes by their actions to terminate Mr. Ryan Roberts.

At this time, Mr. Roberts respectively petitions the Court to immediately side with Mr. Ryan Roberts given the clear evidence of violating Federal Statutes 5 USC §7513, 5 CFR §752.404, 38 USC §7422, & 38 USC §7462, by ordering that all of the requests that were contained within the original filing of Relief be granted in full.

The following is a copy of the initial Relief that was requested in the filing and that the Court should grant in full.

### Relief:

1. Immediately grant an injunction to cease all retaliation against Mr. Roberts, specifically to include the SRB process, and make Mr. Roberts a full-time employee in accordance with the conclusion of his 2-year probationary time.
2. Immediately notify the Department of Veterans Affairs VHA that the Agency MUST follow all procedures and statutes contained within 5 USC §7513 (b)(2), 5 CFR 752.404(c)(1), 5 CFR 752.404(b)(3), 38 USC §7422(c), and 38 USC §7462(b)(1)(a) in ALL cases against ALL employees of the Department of Veterans Affairs VHA.
3. Immediately provide a clear definition of "Professional Conduct and Competency" for the Department of Veterans Affairs VHA to utilize across all Veterans Affairs Medical Facilities when conducting all recommendations or reviews for disciplinary actions.
4. Order the Department of Veterans Affairs VHA to initiate and complete a full, thorough, professional, and unbiased OIG investigation of all cases in which the Robert J Dole

initiated, or executed, disciplinary action against employees of the Department of Veterans Affairs VHA.

   a. The OIG investigation will be completed within 180 days of the Court granting the injunction against the Department of Veterans Affairs VHA.

   b. Identifying all cases that contain errors relating to, but not limited to violation of: procedural actions; VA Policies; VA Directives; Federal Statutes; and/or Criminal Statutes; and listing all violations that are contained in every case, to include who was responsible for causing stated violation.

   c. Starting from April 2015 with the recommendation for termination of Mr. Nathaniel R McClure by the Robert J Dole VAMC (Facility Director Mr. Vasquez and Assistant Director Ms. Bondie contacting Mrs. Pope from Knowledge, Management, and Analytics) through the retaliation against Mr. Ryan Roberts happening at present time (February 2020).

   d. The OIG investigation will provide a detailed and thorough report to the President of the United States, Secretary of the Veterans Affairs, and be made public (report being released to main stream national media outlets, and easily reviewable from the public VA website www.va.gov) for review and reference.

   e. All cases identified by the OIG investigation as containing errors will be immediately reopened and reviewed, on a case by case basis, by the Office of Special Counsel at the expense of the Department of Veterans Affairs VHA; to include notifying the individual that the disciplinary action was against, that the case is reopened, the errors identified, and ability to add documentation, evidence, and statements to the formal review of the case by the Office of Special Counsel

to determine If the case was free of all errors identified, that the Agency would have come to the same conclusion to initiate, or execute, disciplinary action against said employee.

## Title 38 Decision Paper
## Department of Veterans Affairs (VA)

### FACTS

The Department of Veterans Affairs (VA) is comprised of three administrations: Veterans Health Administration (VHA); Veterans Benefits Administration (VBA); and the National Cemetery Administration (NCA). (Attachment A). VA is the second largest Federal Department and has a workforce of approximately 351,540 full-time employees. *Id.* At present, the VA employs approximately 108,606 Title 38 personnel appointed under 38 U.S.C. § 7401(1)[1]. (Attachment B). VHA is America's largest integrated health care system, providing care at 1,255 health care facilities, including 170 medical centers and 1,074 outpatient sites of care of varying complexity (VHA outpatient clinics), serving 9 million enrolled Veterans each year. (Attachment C).

On March 15, 2011, a Master Collective Bargaining Agreement (2011 VA-AFGE Master Agreement) by and between the American Federation of Government Employees/National Veterans Council (Union or AFGE), and the VA was approved, signed, and effectuated. (Attachment D). The 2011 VA-AFGE Master Agreement includes Article 58, *Professional Standards Boards.* (Attachment E).

On December 15, 2017, the VA provided notification to the Union to "reopen and renegotiate the 2011 VA-AFGE Master Agreement." (Attachment F).

On May 2, 2019, the VA and AFGE Master Agreement bargaining teams exchanged initial contract proposals in order to negotiate a successor VA-AFGE Master Agreement (Successor VA-AFGE Maser Agreement). (Attachment G). In the exchanged proposals for Successor VA-AFGE Master Agreement, the Union included a proposal covering Article 58, *Professional Standards Boards. Id.*

On September 10, 2019, Richard A. Stone, the Executive in Charge of VHA, submitted a Request for a 38 U.S.C. § 7422(b) determination by the VA Secretary on Article 58 in the 2011 VA-AFGE Master Agreement and the Successor VA-AFGE Master Agreement negotiations. (Attachment H).

---

[1] The employees described in 38 U.S.C. § 7421(b), Physicians, Dentists, Podiatrists, Optometrists, Registered Nurses, Physician Assistants, Expanded-duty dental auxiliaries, and Chiropractors, are appointed under 38 U.S.C. § 7401(1).

## AUTHORITY

The VA Secretary[2] has the final authority to decide whether a matter or question concerns or arises out of professional conduct or competence (i.e., direct patient care or clinical competence), peer review, or employee compensation within the meaning of 38 U.S.C. § 7422(b).

## ISSUE

(1) Whether Article 58, *Professional Standards Board,* of the 2011 VA-AFGE Master Agreement is a matter or question concerning or arising out of professional conduct or competence and peer review within the meaning of 38 U.S.C. § 7422(b) and is thus excluded from collective bargaining and review by any other agency pursuant to 38 U.S.C. § 7422(d).

(2) Whether the Union's contract proposal for Article 58, *Professional Standards Board,* which the Union submitted to VA during the collective bargaining negotiations over a Successor VA-AFGE Master Agreement, is a matter or question concerning or arising out of professional conduct or competence and peer review within the meaning of 38 U.S.C. § 7422(b), and is thus excluded from collective bargaining and review by any other agency pursuant to 38 U.S.C. § 7422(d).

## DISCUSSION

The Department of Veterans Affairs Labor Relations Improvement Act of 1991, codified in part at 38 U.S.C. § 7422, granted limited collective bargaining rights to Title 38 employees under 38 U.S.C. § 7422(a), and specifically excluded from the collective bargaining process matters or questions concerning or arising out of professional conduct or competence, peer review, or any matter or question concerning or arising from employee compensation, as determined by the Secretary. 38 U.S.C. § 7422(b)(d). "Professional conduct or competence" is defined to mean "direct patient care" and "clinical competence." 38 U.S.C. § 7422(c).

Article 58, *Professional Standards Board,* of the 2011 VA-AFGE Master Agreement states that:

A. The Union may submit names of candidates for Professional Standards

---

[2] The term Secretary used herein also encompasses any delegee acting on the Secretary's behalf.

Boards. The Department will give serious consideration to appointing from the candidates recommended by the Union.

B. Employees normally will be reviewed annually by the Professional Standards Board. (Attachment E).

The Union's proposed Article 58, *Professional Standards Board,* for the Successor VA-AFGE Master Agreement states:

> A. The Union may submit names of candidates for Professional Standards Boards. The Department will give serious consideration to appointing from the candidates recommended by the Union. **The Department will notify the local union in writing when the local union's candidate is not selected.**
>
> B. Employees normally will be reviewed annually by the Professional Standards Board. (Attachment G) (emphasis in original).

The primary functions of Professional Standards Boards (PSBs) are, subject to the limitations in VA Handbook 5005, to review applicants to ensure they meet VA standards, to review qualifications for advancement, and to conduct probationary reviews for medical care providers, including the employees described in 38 U.S.C. § 7421(b). (Attachment I, VA Handbook 5005, Part II, Ch. 3, §C, ¶¶ 1(a); 5). PSBs also conduct summary reviews of probationary employees' work records where "summary separation from Federal Service may be justified" during the probationary period. (Attachment J, VA Handbook 5021, Part III, Ch. 1, ¶¶ 2(f); 3(a)). Once the summary review is complete, the PSB submits its findings and recommendations as to whether the employee should be retained or separated to the appropriate officials. *Id.* at ¶ 3(g-h). VA Handbook 5021 notes that "[s]ummary reviews deal with issues related to professional competence or conduct and peer review." *Id.* at ¶ 3(d)(5). For the employees described in 38 U.S.C. § 7421(b) (i.e., physicians, dentists, podiatrists, optometrists, registered nurses, physician assistants, expanded-duty dental auxiliaries, and chiropractors), 38 U.S.C. § 7422(b) specifically prohibits collective bargaining over matters that concern or arise out of such employees' professional conduct or competence and peer review.

PSBs "act for, are responsible to, and are agents of, the Under Secretary for Health," and "VHA management officials are responsible for ensuring the effective functioning of boards;" thereby making them integral in management's decision-making process. (Attachment I, VA Handbook 5005, Part II, Ch. 3, § C, ¶ 1(a), (d)). Whenever possible, PSBs are composed of "three to five employees from the same occupation as the

individual being considered." *Id.* at ¶ 3(c); ¶ 4. Decisions about the appointment or termination of PSB members are made by the appropriate management officials, such as the Under Secretary for Health, Network Directors, or Facility Directors. *Id.* at ¶ 2. Additionally, "Persons selected to serve on boards will be chosen from the most capable, experienced, and responsible personnel," and must be at a grade and level that is equal to or higher than the employee being considered. *Id.* at ¶ 3(a). *Id.* at ¶ 4.

*Peer Review*

On its face, it is evident that PSBs conduct peer reviews, and the language of Article 58 in the 2011 VA-AFGE Master Agreement and the proposed Article 58 for the Success VA-AFGE Master Agreement confirm this by stating, "Employees normally will be reviewed annually by the Professional Standards Board." (Attachment E; Attachment G). The Secretary has previously found that matters pertaining to PSB procedures, specifically the right to union representation, are questions related to or arising out of peer reviews. In VAMC Hampton, the Union sought the right to represent witnesses, other than the subject employee, appearing before a PSB summary review proceeding. (Attachment K, VAMC Hampton (July 15, 2011)). Ultimately, the VA Secretary concluded that matter involved "peer review within the meaning of 38 U.S.C. § 7422(b)." *Id.* Additionally, in an earlier case at VAMC Hampton, the union wanted to participate as an observer during PSB meetings but the USH decided that "[e]xtending the union's rights to attend [PSB] meetings beyond those specifically provided for in VA policies and the Master Agreement.....is clearly a matter that 'concerns, or arises out of peer review,' and thus is not subject to collective bargaining or grievances procedures thereunder." (Attachment L, VAMC Hampton (May 7, 2001)), *see also* Attachment M, VAMC Leavenworth (Nov. 24, 1992) (no right to representation at PSB because it was a peer review issue)). The Secretary has applied this rational to other functions of the Board as well, including the initial review of applicants and credentialing/clinical performance reviews. (Attachment N, Minneapolis VA Health Care System (Oct. 20, 2014) (PSBs initial boarding decision is a matter or question excluded by 38 U.S.C. § 7422 as a peer review or compensation issue)); Attachment O, VAMC Washington, DC (June 3, 2014)("PSBs by, definition, are engaged in peer review," including when conducting credentialing and clinical performance reviews)).

The Federal Labor Relations Authority (FLRA) has also repeatedly upheld VA management's unfettered discretion related PSBs, given their inherent peer review function. The FLRA has ruled that there was no right to union representation during PSB proceedings, because the VA "is authorized to prescribe regulations governing, among other things, probationary peer review proceedings for nonhybrid employees without regard to the bargaining and representational rights and obligations...." Dep't of Veterans Affairs Med. Ctr. Jackson, Miss. & Nat'l Fed'n Fed.Employees, 49 F.L.R.A.

171, 175 (Feb. 28, 1994) *reconsideration denied,* 49 F.L.R.A. 701 (Apr. 8, 1994); *see also* Dep't of Veterans Affairs Med. Ctr., Leavenworth, Kan. & Nat'l Fed'n Fed. Employees, 49 FL.R.A. 1624, 1627-1628 (Jul. 21, 1994) (holding "the Department was free to promulgate regulations precluding union representation at [a PSB] peer review hearings."). These FLRA findings were upheld by the D.C. Circuit. NFFE, Local 589 v. Fed. Labor Relations Auth., 73 F. 3d 390, 393-394 (D.C. Cir. 1996) ("[W]e agree with the FLRA's view that the Secretary exercises complete discretion over peer review procedures....").

Similar to the FLRA cases above regarding representational rights, the language in Article 58 of the 2011 VA-AFGE Master Agreement as well as the Union's proposed language for Article 58 in the Successor VA-AFGE Master Agreement regarding the selection of PSB members improperly infringes on management's unfettered right to determine peer review procedures for employees described in 38 U.S.C. § 7421(b) pursuant to 38 U.S.C. § 7422(b). Further, the Articles' statement regarding annual reviews directly involves both the substance and procedures of the peer review process and is non-negotiable under 38 U.S.C. § 7422(b)(2).

*Professional Conduct and Competence*

In addition to being inherently a peer review process, PSBs also concern or arise out of matters of professional conduct and competence as described in 38 U.S.C. § 7422(b) and defined in 38 U.S.C. § 7422(c). As noted above, PSBs are charged with reviewing medical qualifications, assessing qualifications for advancement of medical providers, and to conduct a review of probationary employee's performance. (Attachment I, VA Handbook 5005, Part II, Ch. 3, § C, ¶ 5). These matters are inherently connected with the professional conduct of competence of VA medical providers. In VAMC Leavenworth, the VA Secretary's finding that the Union did not have representational rights at a PSB was also based on a finding that it "concerns a matter or question arising out of professional competence." (Attachment M, VAMC Leavenworth (November 24, 1992)). In VAMC Washington, DC, the Secretary found that performance reviews conducted by a PSB are "peer review processes or alternatively, involve assessments of the professional conduct or competence of a title 38 health care professional." (Attachment O, VAMC Washington, DC (June 3, 2014) ("the clinical review of a title 38 employee's performance, including review by a facility's PSB falls within 38 U.S.C. § 7422's peer review or professional conduct or competence exclusions)). The peer review function conducted by the PSBs is therefore inextricably intertwined with VA medical professionals' professional conduct or competence.

Similar to the above decisions, Article 58, *Professional Standards Board,* in both the 2011 VA-AFGE Master Agreement and the Union proposal for the Successor VA-AFGE Master Agreement, addresses peer review procedures for, and the substantive review of the professional conduct and competence of, employees described in 38 U.S.C. § 7421(b). PSBs are peer review processes that are inextricably intertwined with issues of direct patient care and clinical competence. Therefore, both articles are outside the scope of 38 U.S.C. § 7421(b) employees' collective bargaining rights pursuant to 38 U.S.C. § 7422(b).

### RECOMMENDED DECISION

Article 58, *Professional Standards Boards,* of the 2011 VA-AFGE Master Agreement concerns or arises out of professional conduct or competence and peer review within the meaning of 38 U.S.C. § 7422(b) and is thus excluded from collective bargaining and review by any other agency pursuant to 38 U.S.C. § 7422(d).

*RLW*
_____
Approved

_____
Disapproved

The Article 58, *Professional Standards Boards,* contract proposal submitted by the Union for the Successor VA-AFGE Master Agreement concerns or arises out of professional conduct or competence and peer review within the meaning of 38 U.S.C. § 7422(b) and is thus excluded from collective bargaining and review by any other agency pursuant to 38 U.S.C. §7422(d).

*RLW*
_____
Approved

_____
Disapproved

*Robert L. Wilkie*
_____
Robert L. Wilkie
Secretary of Veterans Affairs

25 oct 19
_____
Date